# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ALLEN HAMILTON** and **LOIS HAMILTON**, | Case No.: 09-cv-01094-SU |
| Plaintiffs, | |
| v. | **OPINION AND ORDER ADOPTING FINDINGS AND RECOMMENDATIONS** |
| **SILVEN, SCHMEITS & VAUGHAN, P.C.** and **ALAN J. SCHMEITS**, | |
| Defendants. | |

**SIMON, District Judge**,

On October 19, 2011, Magistrate Judge Patricia Sullivan issued findings and recommendations ("F&R"), Dkt. #64, in the above captioned case and referred them to this court. Dkt. #65. Judge Sullivan recommended that the court deny in part and grant in part Defendants' motion for summary judgment, Dkt. #30.

Under the Federal Magistrates Act, the court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." Federal Magistrates Act, 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of an F&R to which neither party has objected, the Magistrates Act does not prescribe any standard of review: "There is no indication that Congress, in enacting [the Magistrates Act], intended to require a district judge to review a magistrate's report[.]" *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *see also United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied*, 540 U.S. 900 (2003) (the court must review *de novo* magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court review the magistrate's findings and recommendations for "clear error on the face of the record."

Plaintiffs Allen and Lois Hamilton ("Plaintiffs") and Defendants Silven, Schmeits & Vaughan, P.C. and Alan J. Schmeits ("Defendants") each filed objections to portions of Judge Sullivan's F&R. Dkt. #66-68. The court has reviewed *de novo* the portions of Judge Sullivan's F&R to which the parties object. As discussed below, the court finds that Judge Sullivan correctly evaluated the facts and law. The court has reviewed the remaining portions of the F&R for clear error; no error is apparent. Accordingly, the court adopts Judge Sullivan's F&R.

## DISCUSSION

### A.    Background

Edward and Patricia Elms ("the Elmses") owned two parcels of adjacent property in Baker County, Oregon. On December 10, 1992, they sold the southern parcel to Joe and Lisa Emery ("the Emerys"). Dkt. #29-6. The Elmses continued to reside on the northern parcel. On May 4, 2001, the Emerys executed a deed-in-lieu-of-foreclosure in favor of American General

Finance, Inc. ("American Finance").[1] Eight months later, on January 14, 2002, Plaintiffs Allen

and Lois Hamilton purchased the property from American Finance. The deed in each transaction

described the property as:

> Lot 1, 2, and the South 10 feet of Lot 3, Block 7, McCRARY'S ADDITION TO BAKER
> CITY, in Baker City, Country of Baker and State of Oregon; TOGETHER WITH those
> portions of the vacated alley to the West, and vacated Sixth Street to the East,
> EXCEPTING the Eastern 15 feet of said vacated Sixth Street, inurring thereto by reason
> of the vacation thereof under Ordinance Nos. 2740 and 2747 of the City of Baker.

Plaintiffs made the property their primary residence. Dkt. #49.

In 2006, a dispute arose between Plaintiffs and the Elmses, who still owned the adjacent

property to the north. The Elmses contended that Plaintiffs had encroached approximately three

feet onto their property. In August of that year, the Elmses filed suit for quiet title, ejectment, and

trespass. Dkt. #29-2. In their complaint, filed in Baker County Circuit Court, the Elmses alleged

that Plaintiffs had erected a fence and planted a garden on a three-foot strip ("fence line strip")

on the southern portion of the Elmses' property.

Plaintiffs hired Defendants to defend the suit. Defendants filed an answer on Plaintiffs'

behalf. In their answer, Plaintiffs raised eight affirmative defenses and counterclaims, disputing

the Elmses' ownership of the fence line strip and claiming, in addition, an easement across a

portion the Elmses' property ("Sixth St. access"). Specifically, Plaintiffs asserted: (1) an

easement by implication for the Sixth St. access; (2) ownership by estoppel for both the fence

line strip and Sixth St. access; (3) easement by prescription for the Sixth St. access; (4) adverse

possession for the fence line strip; (5) trespass for the Sixth Street access and damages caused by

pesticide spraying; (6) trespass causing personal injury from the spraying of pesticide; (7)

---

[1]    Unless otherwise cited, the facts are taken from Judge Sullivan's F&R.

easement by ordinance for the Sixth St. access; and 8) fraud in the sale of the property. Dkt. #29-3.

The Elmses moved to dismiss and for summary judgment. The Baker County Circuit Court granted the Elmses' motions and entered judgment in favor of the Elmses. One and a half years later, Plaintiffs filed a complaint in Baker County Circuit Court claiming that Defendants' representation was professionally negligent.[2] Dkt. #1. Defendants removed to federal court on diversity jurisdiction, 28 USC §1332(a).[3] Defendants moved for summary judgment. Dkt. ##30-31.

Under Oregon law, an "action for negligence by an attorney" requires the plaintiff to prove the same elements as in "typical actions for negligence": duty, breach of duty, causation, and damages. *Harding v. Bell*, 265 Or. 202, 204 (1973). "To show causation in a legal malpractice action, a plaintiff must demonstrate that she would have obtained a more favorable result in the earlier action if the attorney had not been negligent." *Jeffries v. Mills*, 165 Or. App. 103, 122 (2000); *Harding*, 265 Or. at 205 ("In pleading a legal malpractice action, the client must allege facts sufficient to show the existence of a valid cause of action or defense which, had it not been for the attorney's alleged negligence, would have brought about a judgment favorable

---

[2]      Plaintiffs also claimed breach of contract, but conceded that claim in their response to Defendant's summary judgment motion. Dkt. #42. The only claim before the court is for professional negligence.

[3]      Under the "forum defendant rule," actions in diversity are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Defendants are both citizens of Oregon. In this Circuit, however, "the forum defendant rule embodied in § 1441(b) is a procedural requirement, and thus a violation of this rule constitutes a waivable non-jurisdictional defect subject to the 30-day time limit imposed by § 1447(c)." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 942 (9th Cir. 2006). Plaintiffs did not move to remand within the 30-day timeframe set forth in 28 U.S.C. § 1447(c). Accordingly, Plaintiffs have waived remand under the forum defendant rule.

to the client in the original action."). When "the 'more favorable result' depends on how a factfinder would have resolved the case but for the attorney's negligence, causation is a factual issue in the malpractice case." *Jeffries*, 165 Or. App. at 122.

In their motion for summary judgment, Defendants addressed only the causation element. "Defendants will establish," they argued, that "Plaintiffs[] lack sufficient evidence to prove their case. It necessarily follows that Plaintiffs cannot prove that, but for the alleged negligence of Defendants, a reasonable judge would have ruled differently . . . in the underlying case." Def.'s Mot. Sum. J. 8-9. Following oral argument, Judge Sullivan issued an F&R recommending that the court grant in part and deny in part Defendants' motion. Judge Sullivan found that Defendants had successfully shown that Plaintiffs failed to raise a genuine issue for trial with respect to the counterclaims contending that Plaintiffs had acquired title to the fence line strip and the Sixth St. access (the first, second, third, fourth, seventh, and eight counterclaims.) Judge Sullivan also found, however, that Plaintiffs had adduced sufficient evidence of causation with respect to the counterclaims asserting damages resulting from trespass (the fifth and sixth counterclaims).

Both Plaintiffs and Defendants filed objections to Judge Sullivan's F&R. Dkt. #s 66-68. Plaintiffs object to Judge Sullivan's recommendation that the court grant in part the motion for summary judgment; Defendants object to her recommendation that the court deny in part the motion for summary judgment. On *de novo* review on those portions of Judge Sullivan's opinion to which the parties object, the court adopts Judge Sullivan's findings and recommendations.

/ / /

/ / /

/ / /

B.     **Plaintiffs' Objections**

1.   **Boundary by estoppel / fraud**

Plaintiffs object to Judge Sullivan's findings that the underlying counterclaims for ownership by estoppel and fraud were meritless. Plaintiffs state that "the claim that was initially drafted as 'fraud' is subsumed in the 'boundary by estoppel' claim." Pl.'s Obj. at 3. The court agrees and addresses the boundary by estoppel and fraud claims together.

The doctrine of boundary by estoppel provides that where "a seller represents a particular line to be the boundary between the property that he is selling and the property that he is retaining and he induces a buyer to buy up to the purported boundary, the seller is estopped from later denying the accuracy of his representation of the boundary." *Neff v. Sandtrax, Inc.*, 243 Or. App. 485, 491 (2011). Judge Sullivan found that Plaintiffs had no claim for boundary by estoppel with respect to the fence line strip on two bases: First, because the "Elms were not the sellers" to Plaintiffs and second, because the "Elms never made any representation to [P]laintiffs during the purchase of the Property." F&R 29.

Plaintiffs object to both of Judge Sullivan's bases. They first contend that "boundary by estoppel applies" even though Plaintiffs did not purchase the property "directly from the Elms." Pl.'s Obj. 6. Citing to *Neff*, 243 Or. at 494, they argue that the doctrine of boundary by estoppel applies to successive purchasers of the property: "American Finance was a successor in interest to Elms (Elms sold to Emery, who conveyed to American Finance). . . . Thus, Elms's representations regarding the boundaries is [*sic*] binding on American Finance." Pl.'s Obj. 6. In other words, Plaintiffs appear to contend that the Emerys had a valid claim for boundary by estoppel against the Elmses and because Plaintiffs are "successor[s] in interest" to the Emerys, they may assert that claim.

The court disagrees. Plaintiffs have not demonstrated that the Emerys had a valid claim for boundary by estoppel against the Elmses.[4] Plaintiffs cite to two statements to attempt to prove that the Emerys had a claim: The first is a handwritten statement, prepared by Plaintiff Lois Hamilton and signed by Joe Emery. It states: "It was my understanding that all of the property / yard on the South side of Mr. Elmses' chain link 8' fence was part of the property I purchased from him." Dkt. #50-6. The second is from Mr. Emery's deposition, taken on January 18, 2011. During the deposition, Mr. Emery stated that he used the fence line strip as "part of the yard." Dkt. #50-7. Neither statement, however, indicates that the Elmses made any representation about the boundary line to the Emerys, or that such a representation, even if it had been made, induced the Emerys to purchase the property. In the absence of such evidence, Plaintiffs have failed to establish that the Emerys ever had a valid claim for boundary by estoppel. Since the Emerys had no claim, the Emerys' "successor[s] in interest" cannot succeed to any such claim.

Plaintiffs also object to Judge Sullivan's finding that the "Elms never made any representations to the [P]laintiffs during the purchase of the property." F&R 29. Plaintiffs do not dispute the factual accuracy of Judge Sullivan's finding. They argue, instead, that the Elmses' *silence* "led the Hamiltons to believe they owned the area south of the fence" Pl.'s Obj. 6 Plaintiffs contend that they "reasonably relied on" that silence. Pl.'s Obj. 6. Plaintiffs' argument is unavailing. As *Neff* makes clear, boundary by estoppel turns in part on the representations that the *seller* made to the purchaser. 243 Or. App. at 491. The Elmses did not sell the property to

---

[4] The court is also unconvinced that *Neff* establishes that successors in interest to the original purchaser may claim boundary by estoppel against the original seller. *Neff* addressed whether boundary by estoppel estops the original seller's privies in estate from denying a boundary. 243 Or. App. at 494. It did not address whether the doctrine permits the original purchaser's privies to assert a claim. Because Plaintiffs have failed to prove that the Emerys had a valid claim for boundary by estoppel in the first place, the court need not reach this issue.

Plaintiffs.[5] Hence, the Elmses' silence cannot form the basis for Plaintiffs' boundary by estoppel claim. Consequently, the court adopts Judge Sullivan's finding with respect to ownership by estoppel.

### 2.    Easement by prescription

Plaintiffs next object to Judge Sullivan's finding that Plaintiffs' easement by prescription counterclaim was meritless.[6] Pl.'s Obj. 9. Judge Sullivan found that "plaintiffs cannot meet the requirements of an easement by prescription to the Sixth Street access because use by the Emerys was not adverse but permissive." F&R 19. Although Plaintiffs contend that they "presented sufficient evidence to support their claim for easement by prescription" (capitalization omitted), they do not challenge this finding. Pl.'s Obj. 9. In fact, Plaintiffs agree that the "property owner may rebut the presumption of adversity by showing that the nonowner's use during the prescriptive period was permissive." Pl.'s Obj. 12-13. Plaintiffs have not offered any reason to disagree with Judge's Sullivan's finding that the Emerys used the Sixth St. access with permission from the Elmses. Accordingly, the court adopts Judge Sullivan's finding with respect to easement by prescription.

/ / /

---

[5]    Plaintiffs cite several Oregon cases for the proposition that a seller's silence can, in some cases, constitute fraudulent misrepresentation. Pl.'s Obj. 4-5. All those cases, however, involve a *seller's* representation to the purchaser. As such, they provide no guidance in the instant circumstances. In addition, Plaintiffs submitted a post-hearing memorandum citing an additional case: *Heverly v. Kirkendall*, 257 Or. 232 (1970). Dkt. #75. This case addresses a *seller's* representations to the buyer. As stated above, the Elmses did not sell the property to Plaintiffs, or make any representations to them.

[6]    Plaintiffs combine their objections to Judge Sullivan's findings on the validity of the easement by prescription and adverse possession counterclaims. Pl.'s Obj. 9 ("The legal analysis regarding the easement by prescription and adverse possession claims are virtually identical."). Because Judge Sullivan provided separate and distinct reasons for rejecting those counterclaims, however, the court considers them separately.

### 3.      Adverse possession

Plaintiffs next object to Judge Sullivan's conclusion that Plaintiffs did not have a valid counterclaim for adverse possession. To establish adverse possession, the possessor of property "must establish by clear and positive proof that he and his predecessors have had actual, open, notorious, exclusive, continuous and hostile possession for the full statutory period of ten years under claim of right or color of title." *Garrett v. Lundgren*, 41 Or. App. 23, 25 (1979). "The period of possession may be completed by one possessor for the full statutory period or by a series of possessors in privity with each other under the doctrine of tacking." *Evans v. Hogue*, 296 Or. 745, 755 (1984). "Privity exists if successive possessions are connected by an understanding that the rights of the possessor will be transferred, and if a transfer of possession in fact occurs." *Id.* The "determinative question" for tacking "is whether there is evidence that the [original possessor] intended to transfer any rights in the disputed property that they may have acquired by adverse possession." *Timber Service Co. v. Ellis*, 163 Or. App. 349, 354 (1999).[7]

Judge Sullivan found that "there is absolutely no evidence in the record suggesting there was any intention on the parts of the Emerys and American Finance to transfer rights to the disputed fence line strip." F&R 32. Although Plaintiffs present a number of arguments about tacking, possession, and acquiescence, *see* Pl.'s Obj. 11-13, they do not address this finding. Plaintiffs present no evidence that the Emerys or American Finance intended to transfer

_____

[7]      In *Timber Service Co.*, the original owner completed the statutory period of ten years for adverse possession of the disputed property. 349 Or. App. 353. The question was whether disputed property acquired by adverse possession, but not yet designated by deed, tacked to the subsequent possessor. *Id.* In this case, one relevant question is whether adverse possession allegedly begun, but not yet completed, by the original possessor, the Emerys, tacked to the subsequent possessors, American Finance and Plaintiffs. The Oregon Supreme Court held that tacking operates in the same way in both circumstances. *Evans*, 296 Or. at 756.

possession of the fence line strip. The court agrees with Judge Sullivan that in the absence of that

evidence, Plaintiffs' adverse possession claim is meritless.[8]

### 4. Easement by implication

Plaintiffs "do not pursue their easement by implication claim regarding the Sixth Street

driveway[.]" Pl.'s Obj. 13. Plaintiffs object, however, to a footnote in Judge Sullivan F&R

denying Plaintiffs leave to amend their complaint. F&R 14 n.2. According to Judge Sullivan's

footnote, "plaintiffs request leave to amend their complaint to assert a further claim against

defendants for failure to plead easement by implication with respect to the fence line strip." F&R

14 n.2. Judge Sullivan denied the request.

With the exception of dispositive motions, such as motions for summary judgment, a

magistrate may "determine any pretrial matter pending before the court." 28 U.S.C.

§ 636(b)(1)(A) (listing dispositive motions that a magistrate may not determine); *see also*

Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim is referred to a

magistrate judge, . . . the magistrate judge must promptly conduct the required proceedings and,

when appropriate, issue a written order stating the decision."). A magistrate's decision on a

nondispositive pretrial motion is subject to reconsideration by the court, but it may only be

reconsidered "where it has been shown that the magistrate judge's order is clearly erroneous or

contrary to law." 28 U.S.C. § 636(b)(1)(A). A motion to amend, such as Plaintiffs' request for

leave to add a new claim, "is a pretrial motion, nondispositive in nature, to be scrutinized under

the clearly erroneous or contrary to law standard of review." *Rice v. Comtek Mfg. of Oregon*,

---

[8]      Plaintiffs' submitted two post-hearing memoranda addressing the relevance of the
deed to adverse possession and the descriptions in the deed. Dkt. #75-76. Because the court finds
that Plaintiff offered no evidence that either the Emerys or American Finance intended to transfer
possession of the fence line strip, it need not decide the effect, if any, of the deed on adverse
possession.

Inc., 766 F.Supp. 1550, 1550 (D. Or. 1990). Accordingly, this court reviews Judge Sullivan's

order denying leave to amend under a "clearly erroneous or contrary to law" standard.

      Judge Sullivan is correct that leave to amend may be denied if amendment would be

futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). She set forth several reasons why amendment

would be futile: Mr. Emery never believed an easement for the fence line strip existed; the

Elmses did not intend to create an easement for the fence line strip; and the Elmses never made

any representations to Plaintiffs about an easement when Plaintiffs purchased the property. *See*

F&R 14 n.2. The court agrees that these reasons establish that amendment would be futile. Thus,

Judge Sullivan's decision is neither clearly erroneous nor contrary to law. The court, therefore,

adopts Judge's Sullivan's decision denying Plaintiffs' leave to amend their complaint.

## C.    Defendants' objections

      Defendants object to Judge Sullivan's recommendation that the court deny Defendants'

motion for summary judgment with respect to the trespass counterclaims that Plaintiff asserted

against the Elmses. Def.'s Obj. 1-2.

### 1.    Statutory bar to pesticide claims

      Defendants first contend that Judge Sullivan failed to address their argument, made in a

supplemental memorandum after oral argument, that Plaintiffs' trespass claims are barred by

Oregon statute. Def.'s Obj. 2. Plaintiffs respond by offering new evidence that appears to show

that Plaintiffs complied with the statute. Pl.'s Resp. to Def.'s Obj. ("Pl.'s Resp.") 1-2. Both

parties, nonetheless, argue that the court may not accept new evidence and argument after the

magistrate has issued findings and recommendations. Pl's Resp. 1; Def.'s Reply to Pl.'s Resp. 1-

2. This is not so. The Magistrate's Act permits the court to "receive further evidence" at its

discretion. 28 U.S.C. § 636(b)(1); *see also Spaulding v. University of Washington*, 676 F.2d

1232, 1235 (9th Cir. 1982) (court may hold new hearing and take new evidence). The court,

moreover, retains ultimate responsibility for resolving "issues of fact as well as issues of law."

*Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011) (internal quotation marks and citation omitted).

To meet that responsibility, the court may, in its discretion, hear all arguments on an issue, even

those not raised before the magistrate. *See United States v. George*, 971 F.2d 1113, 1118 (4th

Cir. 1992) ("as part of its obligation to determine *de novo* any issue to which proper objection is

made, a district court is required to consider all arguments directed to that issue, regardless of

whether they were raised before the magistrate").

 Defendants argue that Or. Rev. Stat § 634.172 bars Plaintiffs' trespass counterclaims.

Or. Rev. Stat. § 634.172(1) provides in part that "[n]o action against a landowner . . . arising out

of the use or application of any pesticide shall be commenced unless, within 60 days from the

occurrence of the loss, [or] within 60 days from the date the loss is discovered . . . the person

commencing the action" meets two conditions. The claimant must: (1) file "a report of the

alleged loss with the State Department of Agriculture"; and (2) mail "or personally deliver[] to

the landowner . . . who is allegedly responsible for the loss a true copy" of the same report.

Or. Rev. Stat. § 634.172(1)(a)-(b). Failure to comply with the conditions imposed by

Or. Rev. Stat. § 634.172 "is fatal." *Malaer v. Flying Lion, Inc.*, 65 Or. App. 154, 158 (1983).

Defendants contend that Plaintiffs failed to satisfy the second prong because Plaintiffs did not

mail or deliver a report to the Elmses: "Plaintiffs did not provide the required notice to the

landowner, Mr. Elms. They offer no evidence on this point." Def.'s Obj. 4.

 In response, Plaintiffs offer a copy of a report, Dkt. 70-1, allegedly filed with both the

Oregon Department of Agriculture and mailed to Mr. Elms. The report contains a notation at the

bottom stating "mailed copy to Mr. Elms – certified mail. 8/6/06." Plaintiffs' evidence raises a

genuine factual question as to whether Plaintiffs' complied with Or. Rev. Stat. § 634.172.

Accordingly, summary judgment is not appropriate, and the court adopts Judge Sullivan's

findings and recommendations on the underlying trespass for damages counterclaim.

### 2.    Personal injury claims

Defendants also object to Judge Sullivan's finding that Plaintiffs presented sufficient

evidence to show a genuine issue for trial regarding Plaintffs' personal injury counterclaim.

Def.'s Obj. 5. Defendants argue that Plaintiffs failed to prove the causation element of the

counterclaim because they did not offer expert medical testimony: "Given the scientific and

technical nature of the evidence, expert witness opinion is required to establish the causal

connection to toxic exposure. Plaintiffs' speculative suspicion that [pesticide] 2,4-D caused their

ailments is not sufficient." Def.'s Obj. 9. Because Plaintiffs have presented no expert testimony,

Defendants argue, Plaintiffs cannot prove, as a matter of law, that they would have obtained a

more favorable outcome in the underlying case.

Under Oregon law, "[n]ot every medical case requires expert testimony to establish . . .

causation." *Chouinard v. Health Ventures*, 179 Or. App. 507, 512 (2002). When, however, "the

element of causation involves a complex medical question, as a matter of law, no rational juror

can find that a plaintiff has established causation unless the plaintiff has presented expert

testimony that there is a reasonable medical probability that the alleged negligence caused the

plaintiff's injuries." *Baughman v. Pina*, 200 Or. App. 15, 18 (2005). Thus, whether Plaintiffs

have adduced sufficient evidence demonstrating that they would have obtained a more favorable

outcome in the underlying case turns on determining whether Plaintiffs' counterclaim involves a

"complex medical question."

Oregon courts have relied on a number of factors to determine whether a particular case involves a complex medical question such that expert testimony is required.

> In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury[.] *Uris v. State Compensation Dep't.*, 247 Or. 420, 426 (1967).

Generally, Oregon courts have found that expert testimony is necessary, except in "cases of simple injuries, generally without a substantial possibility of alternative causation." *Hudjohn v. S&G Machinery Co.*, 200 Or. App. 340, 353 (2005). Neurological and cognitive impairments and tumors are examples of injuries raising complex medical questions. *Id.*; *Chouinard*, 179 Or. App. at 513.

In their counterclaim, Plaintiffs alleged that the Elmses, "in spraying the chemical 2-4-D[,] caused both of the Defendants' to become ill, developing rashes and illness with the 2-4-D and the contact thereof, [and] making Defendants' home and property uninhabitable by Defendants." Dkt. #29-3. Judge Sullivan noted that some "of [P]laintiffs' alleged physical ailments, including skin irritation, occasionally in the form of rashes, nausea, and sensations of being 'drunk' and 'dizzy,' occurred following their observation of Mr. Elms spraying the garden with 2,4-D and smelling a strong chemical odor." F&R at 38. The causal link between the application of pesticide onto a garden and the subsequent development of temporary skin irritation, rashes, and nausea does not create a complex medical question of the sort that requires expert testimony. Judge Sullivan correctly found a "reasonable person could find that [P]laintiffs' symptoms or injuries existed and were attributable to the 2,4-D spraying." F&R at 39.

If, however, Plaintiffs intend to claim at trial that they suffer from other, more serious or permanent injuries, such as ongoing skin irritation, rashes or nausea, cognitive difficulties, cancer, or other long-term illnesses, they must obtain and present expert testimony to establish a causal link between Mr. Elms' application of 2,4-D and the claimed injury. The court notes that pursuant to Fed. R. Civ. P. 26, Plaintiffs must timely disclose the identity of any expert witness and provide a written report. Thus, the court adopts Judge Sullivan's finding that Plaintiffs have adduced sufficient evidence of causation with respect to the personal injury counterclaim. The court's ruling, however, is limited only to finding sufficient evidence of causation with respect to Plaintiffs' claimed injuries of temporary skin irritation, rashes, nausea, and similar temporary injuries.

## CONCLUSION

The court ADOPTS Judge Sullivan's F&R. Accordingly, Defendants' motion for summary judgment, Dkt. 30, is DENIED in part, and GRANTED in part: DENIED as to the underlying claims of trespass for damages and trespass for personal injury and GRANTED as to all other underlying claims.

Dated this 23rd day of December, 2011.

Michael H. Simon
United States District Judge