IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

|  |  |
|---|---|
| **ALLEN HAMILTON** and **LOIS HAMILTON**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**SILVEN, SCHMEITS & VAUGHAN** and **ALAN J. SCHMEITS,**<br><br>        Defendants. | Case No. 2:09-cv-1094-SI<br><br><br>**OPINION AND ORDER** |

Thomas C. Patton, 8 North State Street, Suite 301, Lake Oswego, Oregon 97034. John A. Sterbick and F. Hunter MacDonald, 1010 South I Street, Tacoma, Washington 98405. Attorneys for Plaintiffs.

Bruno J. Jagelski and Carl Burnham, Jr., Yturri Rose LLP, 89 Southwest Third Avenue, P.O. Box S, Onario, Oregon 97914. Attorneys for Defendants.

**Michael H. Simon, District Judge.**

    Allen and Lois Hamilton ("the Hamiltons" or "Plaintiffs") filed an action alleging legal malpractice by Alan J. Schmeits, Esq. and the law firm Silven, Schmeits & Vaughan, P.C. (collectively, "Defendants") based on Defendants' legal representation of Plaintiffs in an

PAGE 1 – OPINION AND ORDER

underlying property dispute lawsuit brought against Plaintiffs by their then-neighbors. In the underlying case, Plaintiffs filed counterclaims. This Court previously granted partial summary judgment in favor of Defendants and dismissed the claims of Plaintiffs alleging malpractice relating to all of the claims and counterclaims in the underlying lawsuit, with the exception of the counterclaims asserted by Plaintiffs for trespass causing damage to property ("property trespass") and trespass causing personal injury ("personal injury trespass"). Defendants now move for summary judgment against all claims of legal malpractice relating to their prior representation of Plaintiffs in those two trespass counterclaims. Dkt. 120. Defendants also move, in the alternative, for partial summary judgment with regard to a portion of Plaintiffs' alleged damages. For the reasons discussed below, Defendants' motions are denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

PAGE 2 – OPINION AND ORDER

## BACKGROUND

Defendants represented the Hamiltons in their defense of a quiet title action brought in August 2006 by their then-neighbors, Edward and Patricia Elms, as Trustees of the Elms Family Trust ("Elms"), and in prosecuting various counterclaims. Relevant to this matter are the property trespass and personal injury trespass counterclaims. The trespass counterclaims alleged that Mr. Elms sprayed the chemical pesticide 2,4-D onto both a disputed strip of land on which the Hamiltons and Elms both claimed title and onto property that undisputedly belonged to the Hamiltons. The trespass counterclaims alleged that the chemical intrusion caused the Hamiltons to become ill and suffer personal injury. The trespass counterclaims further alleged that the chemical intrusion damaged the Hamiltons' property and garden and rendered the property uninhabitable.

The Hamiltons assert that at the time of the chemical intrusion, the pesticide exposure caused them to suffer from nausea, dizziness, rashes, watering and burning eyes, and hot flashes. The Hamiltons' relatives and neighbors also allegedly suffered immediate symptoms as a result of the chemical spraying. Mr. Hamilton was particularly sensitive to chemical exposure because of his history of prior chemical exposure and resulting illness.

The Hamiltons twice contacted the police to report the chemical intrusion, on June 30, 2006 and July 3, 2006. The first police report indicates that the officer herself smelled chemicals and that the chemicals caused the officer's eyes to water. Declaration of John A. Sterbick, Ex. 7. Dkt. 141-1. It further describes that Mrs. Hamilton was crying and that she told the police officer that Mr. Hamilton was sensitive to chemicals because of a previous chemical exposure "that nearly killed him" and that Mrs. Hamilton was "concerned [Mr. Hamilton] would become ill again." *Id*. The second police report documented that the chemical incursion extended beyond the disputed strip of land and onto the Hamiltons' property. *Id*., Ex. 8. Dkt. 141-2.

On July 16, 2006, Mrs. Hamilton contacted Oregon's poison control center. Sterbick Decl., Ex. 10. Dkt. 142-2. She reported dizziness, nausea, and headache as a result of the pesticide spraying of her garden area by Mr. Elms. Mrs. Hamilton inquired whether she should see a doctor. The poison control center recommended that the Hamiltons vacate the property, change clothes, and see a doctor if the symptoms persist. On July 17, 2006, Mrs. Hamilton reported to the poison control center that she visited a medical clinic but was denied treatment due to an unpaid medical bill. *Id*. On July 21, 2006, the Hamiltons had soil samples collected and tested, which showed abnormally high levels of 2,4-D. Sterbick Decl., Ex. 11. Dkt. 143-1.

In August 2006, the Elms filed suit to quiet title to the disputed strip of land. The Hamiltons filed counterclaims. The Elms filed dispositive motions against the Hamiltons' counterclaims. To assist in responding to the motions, Defendants requested the Hamiltons seek medical treatment, gather medical reports, and locate medical and other experts. The Hamiltons, however, did not seek medical treatment (other than the previously unsuccessful visit to a clinic), provide medical reports, or locate medical or other experts. In opposition to the summary judgment motion, Defendants filed the affidavit of Allen Schmeits and attached exhibits. The affidavit and exhibits of Mr. Schmeits were not accepted by the court, with the exception of three exhibits, because they were legally deficient. Approximately 16 days after the summary judgment response deadline, Defendants filed an affidavit of the Hamiltons. The affidavit of the Hamiltons, however, was not accepted by the court because it was not timely filed. Defendants did not file any other affidavits on behalf of the Hamiltons.

The state court heard argument on the summary judgment motions on August 22, 2007. Jagelski Decl. Ex. 3. Dkt. 121-3. At the summary judgment hearing, the judge noted that the untimely affidavit of the Hamiltons, even if admissible, did not state anything about suffering

PAGE 4 – OPINION AND ORDER

injury or explain the history of the property and the boundary dispute. Sterbick Decl. Ex. 25. Dkt. 150-1. From the bench, the court granted summary judgment against the trespass counterclaims because there was no evidence of injury in the record. *Id.*; Jagelski Decl. Ex. 3. Dkt. 121-3. Ultimately, the court dismissed all of the Hamiltons' counterclaims.

In approximately June 2010, Mrs. Hamilton discovered lumps, which were excised. Those lumps were diagnosed as Non-Hodgkin's lymphoma in February 2011.

In response to the current motion, the Hamiltons submit expert medical testimony linking their emotional and psychological injuries to the chemical intrusion and linking exposure to 2,4-D with increased risk of lymphohematopoietic cancers. Sterbick Decl. Exs. 12-15. Dkts. 143-45. The Hamiltons also submit expert legal testimony opining that Defendants' breached the standard of care in representing the Hamiltons in the prosecution of the trespass counterclaims. Declaration and Report of Bennett J. Wasserman. Dkt. 153.

## DISCUSSION

### A. Motion for Summary Judgment on all Claims

Defendants move for summary judgment against Plaintiffs' legal malpractice claims relating to Defendants' prior representation of the Hamiltons with respect to the property trespass and personal injury trespass counterclaims. Defendants argue that the Hamiltons fail to present a genuine issue for the jury on the issue of legal malpractice because the Hamiltons did not offer any admissible evidence that Defendants breached the standard of care in representing the Hamiltons with respect to the underlying trespass counterclaims. Defendants also argue that there are no material issues of fact in dispute relating to the trespass counterclaims, and that judgment should be entered for Defendants as a matter of law.

1. **Admissibility of Plaintiff's expert report**

Defendants argue that the declaration and report of Plaintiffs' legal expert, Bennett J. Wasserman, does not meet the standards of Federal Rule of Civil Procedure 56(c)(4) because he is not licensed in Oregon, he is not familiar with the standard of care in Eastern Oregon, and his declaration is not based on personal knowledge because of a sentence in the report that states: "The opinions expressed in this report do not constitute my personal opinions." Defendants' arguments are not persuasive.

   a. **Out-of-state license and familiarity with Oregon standard of care**

Defendants cite no legal authority for the proposition that because Mr. Wasserman is not licensed in Oregon his expert opinion is inadmissible for purposes of summary judgment. Indeed, the law is to the contrary. Both federal and state courts allow out-of-state attorneys to testify as experts as long as they familiarize themselves with the relevant state law. As explained by the District of Wyoming:

> The court finds that Mr. Barton and Ms. Dubofsky are well qualified and have familiarized themselves sufficiently with Wyoming law to testify regarding the legal standard of care in similar cases in Wyoming. In general, the courts have allowed experts in malpractice cases to become familiar with the applicable standard of care through research. *See, e.g., Harvey v. U.S.,* 2006 WL 1980623, *4 (D.Colo. 2006) (holding that a medical expert may become familiar with the applicable standard of care through knowledge, skill, experience, training, or education); *Brett v. Berkowitz,* 706 A.2d 509, 517–18 (Del.Supr.1998) (holding that an out-of-state expert must demonstrate that he has familiarized himself with the local standard of care); *Jeffers, Mangels & Butler v. Glickman,* 234 Cal.App.3d 1432, 1443 (Cal.App.2d.1991) (holding that private study and contact with other professionals in a field may qualify an attorney as an expert). Although Plaintiff's experts' limited experience in Wyoming courts may be fertile ground for cross-examination, it is not a deficiency that prevents them from serving as expert witnesses in this case.

*Hjelle v. Ross, Ross & Santini*, Civil Action No. 2:07-cv-00006-WDM-KLM, 2007 WL 5328994, *1 (D. Wyo. Dec. 19, 2007).

> Here, Mr. Wasserman states that:
>
>> I have studied various source materials relating to the substantive and procedural law of the State of Oregon as they relate to attorneys who represent clients with personal injury claims in general and specifically where such claims arise from chemical poisoning. . . . At the time of the representation at question in this case, the standards of care applicable to attorneys who handle plaintiff's toxic tort claims in the Oregon community where the defendant practiced are substantively and substantially the same throughout the nation.

Wasserman Report at 4. Dkt. 153-1; *see also id*. at 26 (citing to the Oregon standard of care from the Oregon Professional Rules of Conduct, Rules 1.1, 1.16, and 1.3). Because Mr. Wasserman familiarized himself with Oregon law, his report should not be excluded merely because he is no located in Oregon.

Defendants also incorrectly assert in their brief that "Plaintiffs' New York lawyer makes no pretense that he knows anything about the practice of law in eastern Oregon." (Defs. Reply Br. at 3). To the contrary, Mr. Wasserman states, as quoted above, that he familiarized himself with the standard of care in the Oregon community where Defendants practiced at the time of their representation of the Hamiltons and he applied the Oregon rules and standards of professional conduct. Wasserman Report at 4-5; 26. Dkt. 153-1. This is sufficient to permit consideration of his expert report at summary judgment.

### b. Personal knowledge

Defendants further argue that Mr. Wasserman's expert report is insufficient under Federal Rule of Civil Procedure 56(c)(4), which states that, as relevant here, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ." The Federal Rules of Evidence, however, allow an expert to base his opinion on "facts or data . . . that the

PAGE 7 – OPINION AND ORDER

expert *has been made aware of* or personally observed." Fed. R. Evid. 703 (emphasis added). Further, the Federal Rule of Evidence requiring that a witness must have personal knowledge to testify expressly states that this requirement of personal knowledge "does not apply to a witness's expert testimony under rule 703." Fed. R. Evid. 602.

A court deciding a summary judgment motion may rely on an expert opinion based on the facts of the case and not on personal knowledge. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1460 (9th Cir.1988), *vacated*, 490 U.S.1987 (1989), *reinstated on remand* by 886 F.2d 235 (1989) (finding that because Rule 703 permits expert testimony to be based upon facts or data made known to an expert, which need not be admissible if it is of the type reasonably relied upon by experts in the field, expert witnesses are likewise permitted to base affidavits, for purposes of summary judgment, upon the same sources rather than upon personal knowledge); *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980) (rejecting the defendants' argument that the expert affidavit was conclusory, based on hearsay and not personal knowledge, and otherwise inadmissible opinion evidence because Rules 702, 703, 704, and 705 of the Federal Rules of Evidence govern expert testimony and experts may base opinions or inferences on facts or data not admissible in evidence if they are of a type reasonably relied upon by experts in the field); *Gasaway v. Northwestern Mut. Life Ins. Co.*, 820 F.Supp. 1241, 1246 n.2 (D.Haw.1993) (finding that under then-Rule 56(e)[1] "[e]xpert testimony is admissible even if it is not based on first hand knowledge of the facts"). The expert report in this case relies on facts and data that are of a type reasonably relied upon by experts in the field, and is, therefore admissible.

Additionally, Mr. Wasserman submitted a declaration stating that his statements are true and correct to the best of his information, knowledge, and belief. Dkt. 153. His declaration

---

[1] In 2010 Rule 56 was amended, and the provisions of Rule 56(e) relating to personal knowledge were carried forward into the current Rule 56(c)(4).

PAGE 8 – OPINION AND ORDER

incorporated by reference all of the statements and opinions contained in his legal report. He also summarized his opinion in his declaration. He repeatedly references "my opinion" in both his declaration and his expert report. Although the one sentence in Mr. Wasserman's report that states the opinions in the report "do not constitute my personal opinions" may be fodder for cross examination, it does not override the numerous other textual and contextual statements in the report and declaration that the opinions expressed are Mr. Wasserman's.

### 2. Issues of fact

Defendants also argue that summary judgment should be granted because Plaintiffs' claims are based on two inaccurate assumptions: (1) that Mr. Schmeits should have been "clairvoyant" and foresaw that Mrs. Hamilton would be diagnosed with cancer; and (2) that the underlying case was a major toxic tort litigation. Defs. Reply Br. at 4. Defendants do not articulate exactly how these allegedly erroneous assumptions result in there being no genuine dispute as to a material fact, and even if Defendants are correct in their contentions, they do not support judgment as a matter of law.

First, Defendants do not present any argument relating to the legal malpractice claim alleging that Defendants breached the standard of care in their representation of the Hamiltons in the property trespass counterclaim. Defendants' arguments relate only to the personal injury trespass counterclaim. Thus, Defendants' motion fails as to the legal malpractice claim relating to the property trespass counterclaim.

Second, Defendants' argument about the foreseeability of Mrs. Hamilton's cancer relates to the alternative motion limiting damages and does not support dismissal of the legal malpractice claim based on Defendants' representation of the Hamiltons in their personal injury trespass counterclaim. The counterclaim in the underlying case alleged physical injury, and even if the Hamiltons were limited only to those injuries specifically alleged in the personal injury

PAGE 9 – OPINION AND ORDER

trespass counterclaim (*e.g.,* rashes, nausea, dizziness) (which this Court does not believe is accurate under Oregon law), those allegations are sufficient to defeat summary judgment.

Defendants appear to be arguing that Mrs. Hamilton's cancer was not foreseeable at the time of the personal injury trespass counterclaim, and thus the current lawsuit should be dismissed. Regardless of Mrs. Hamilton's cancer, the harm of rashes and other illness alleged at the time Defendants were prosecuting the personal injury trespass counterclaim on behalf of the Hamiltons is sufficient injury to allege a colorable cause of action. Because there was a colorable personal injury trespass counterclaim in the underlying action, Defendants have not met their burden to show that there is no disputed issue of fact as to whether they negligently represented the Hamiltons in prosecuting that counterclaim.

Third, the argument that Plaintiffs refer to their underlying case as a "major toxic tort litigation" does not support dismissal of the legal malpractice claim relating to the personal injury trespass counterclaim. The Hamiltons' legal expert discusses the law relating to "attorneys who represent clients with personal injury claims in general and specifically where such claims arise from chemical poisoning," and he notes that such claims are commonly referred to as "toxic tort claims." Wasserman Report at 4. It is undisputed that the underlying case included a counterclaim (the Sixth Claim for Trespass and Personal Injury) by the Hamiltons alleging that Mr. Elms sprayed a chemical on the property of the Hamiltons that caused the Hamiltons to become ill. This alleges a personal injury trespass counterclaim arising from chemical poisoning. Whether that counterclaim is labeled by the Hamiltons or their expert as a "toxic tort" or "personal injury" counterclaim is irrelevant for purposes of summary judgment. The Hamiltons have provided evidence that the representation by Defendants relating to the underlying trespass

counterclaims was below the applicable standard of care. That creates an issue of fact for the jury.

Fourth, Defendants' argument that there is no disputed issue of fact as to the Hamiltons' "toxic exposure" is unpersuasive. Defendants argue that they have "submitted ample evidence that there was no toxic exposure whatsoever." Defs. Reply Br. at 6. Defendants do not define "toxic exposure." In this context, "toxic exposure" is generally defined as contact with a substance or agent that can lead to illness, increased risk of cancer or other disease, or death. *See, e.g.,* Note, *Toxic Torts and Emotional Distress: The Case For an Independent Cause of Action for Fear of Future Harm*, 40 Az. L. Rev. 681, 681 n.3 (Summer 1998) (defining "toxic exposure" as "generally any physical contact with a toxic agent that puts the individual at a higher risk of developing cancer or other disease related to the toxin."); *Encyclopedia of Clinical Neuropsychology*, *available at* http://www.springerreference.com/docs/html/chapterdbid/183101.html (defining "toxic exposure" as "a direct or an indirect contact with any natural or man-made substances or agents that can lead to deleterious changes in body structure or function, including illness or death").

Relating to the issue of whether there was "toxic exposure" in the underlying personal injury trespass counterclaim, Plaintiffs submit evidence that the Elms sprayed 2,4-D, Plaintiffs were exposed to that chemical, and that exposure caused immediate injury and increased risk of cancer. Defendants fail to show that their evidence resolves as a matter of law the issue of "toxic exposure" in the personal injury trespass counterclaim in light of the evidence submitted by Plaintiffs. The conflicting evidence of whether there was "toxic exposure" in the underlying action is precisely the type of issue that a jury should decide in this legal malpractice action. *See Chocktoot v. Smith*, 571 P.2d 1255, 1257, 1259 (Or. 1977) (holding that "factual link of cause

PAGE 11 – OPINION AND ORDER

and effect" and the question of what outcome should have followed if defendant attorneys "had conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on facts" are for the jury unless "the evidence places it beyond rational dispute").

## B. Alternative Motion for Summary Judgment Limiting Damages

Defendants state in the caption of their memorandum in support of their alternative motion for partial summary judgment that "[e]ven if Plaintiffs could prove liability, they would only be entitled to damages they could have recovered in the underlying action." Defs. Br. at 8. Dkt. 123. As a general statement of the law, Defendants may be correct. From this proposition, however, Defendants jump to the conclusion: "Under Oregon law, damages for Plaintiff Lois Hamilton's condition are not available because she was not diagnosed with Non-Hodgkin's lymphoma until long after the conclusion of the underlying case." *Id*. at 9. For the reasons that follow, Defendants' conclusion glosses over significant nuances.

Defendants argue that the proper measure of damages for a legal malpractice claim under Oregon law is the damages that would have been recoverable in the underlying case. Defs. Br. at 8. Oregon courts have not expressly defined the measure of damages in an attorney malpractice case. The two cases cited by Defendants as defining the measure of damages do not make such a conclusion as their holding. In *Carter-Holmes v. Sousa*, the court stated that "[t]he *parties agree* that the measure of damages in a malpractice action arising from the loss of a viable claim is generally the value of the putative 'lost judgment.'" 901 P.2d 932, 934 (Or. App. 1995) (emphasis added). The court cited to some treatises and an Oregon case, *Ridenour v. Lewis*, but did not conduct an analysis into the proper measure of damages and reach an independent conclusion.

PAGE 12 – OPINION AND ORDER

The *Ridenour* case similarly states without specific analysis that one of the elements of a legal malpractice claim the plaintiff must prove is damages and that when the plaintiff's theory is that the "defendant's negligence caused her to lose a good cause of action against a third party, the plaintiff has suffered no damage unless the lost judgment would have had some value." 854 P.2d 1005, 1006 (Or. App. 1993). This case does not address the measure of damages, but involves an allegation that the underlying judgment that would have been obtained but for the attorney's negligence would not have been collectible and thus, there was no damage to the plaintiff. The court held that the face value of the underlying judgment was some evidence of its value. *Id*.

These two cases do not directly answer the question of how Oregon law measures legal malpractice damages, but they do provide support for the notion that Oregon follows the general rule, which is explained as:

> There is no single measure of damages in a legal malpractice case and, generally, appropriate measure must be determined by the facts and circumstances of each case. Generally, however, the measure of damages in a legal malpractice action is the amount the client would have recovered but for the attorney's negligence.

7A C.J.S. *Attorney & Client* § 335 (internal footnotes omitted).

Additionally, Oregon cases define causation for legal malpractice actions in a manner consistent with this general measure of available damages. To establish causation in a legal malpractice case under Oregon law, a "plaintiff must show that, but for the defendant's negligence, the plaintiff would not have suffered the claimed harm." *Woods v. Hill*, 273 P.3d 354, 360 (Or. App. 2012) (citation omitted). A plaintiff may do this "by showing that he or she would have obtained a more favorable result had the defendant not been negligent." *Id*.

The case at bar alleges that Defendants breached their contract with the Hamiltons and failed to satisfy the professional standard of care in representing the Hamiltons, causing the

PAGE 13 – OPINION AND ORDER

Hamiltons damage. Compl. at ¶¶ 11-15. There are no facts or circumstances in this case that would appear to justify deviating from the general rule on legal malpractice damages. Thus, the appropriate measure of damages is the amount that the Hamiltons would have recovered on the underlying trespass claims if they had a non-negligent attorney (*i.e.*, the "lost judgment").

Defendants argue that "damages are limited to the *injuries claimed* at the time of the underlying action." Defs. Br. at 10 (emphasis added). The injuries claimed, however, are not the same as the "lost judgment." The Hamiltons are entitled to show how the underlying case would have progressed but for the alleged negligence of Defendants—they can present evidence that the case would have gone to trial, the harms for which they would have sought compensation at trial, and how much in damages they likely would have recovered at trial. With a non-negligent attorney, by the time of trial the Hamiltons might have presented evidence of greater medical harm than just the specific injuries Defendants' actually pleaded on behalf of the Hamiltons in their personal injury trespass counterclaim.

For example, under Oregon law, personal injury damages are recoverable for future medical harm, fear of developing cancer, and for the increased risk of cancer. *See, e.g., Lowe v. Philip Morris USA*, 183 P.3d 181, 183 (Or. 2008) (noting that when a plaintiff has alleged "any present physical harm as a result of defendants' negligence" she can recover damages for "fear of developing cancer, for the increased risk of developing cancer that she faces, or for the costs of medical care to determine the extent of her harm"); *Zehr v. Haugen*, 871 P.2d 1006, 1012 (Or. 1994) (damages may be obtained for past and present harms and "harms that may occur in the future"); *Feist v. Sears, Roebuck & Co.*, 517 P.2d 675, 679 (Or. 1973) (holding that testimony relating to the susceptibility of future medical harm was properly admitted, even though that harm was not probable and was no more than a possibility). Thus, the Hamiltons may present

PAGE 14 – OPINION AND ORDER

evidence in the current case that a non-negligent attorney would have offered evidence at trial in the underlying personal injury trespass counterclaim of Plaintiffs' future medical harm, medical monitoring, and fear of increased risk of cancer.

Defendants argue that damages for future medical harm are too speculative because they were not reasonably certain. Under Oregon law relating to future medical harm, however, "[t]he general rule against possible but not probable future damages was modified in the case of *Feist* . . . ." *Pelcha v. United Amusement Co.*, 606 P.2d 1168, 1168 (Or. App. 1980) (rejecting the defendant's argument based "on the general rule at common law against recovery for future consequences that are not reasonably certain"); *see also Zehr*, 871 P.2d at 1012 (rejecting argument that as a matter of law alleged future medical harm was too speculative); *Feist*, 517 P.2d at 679-80 (trial court instruction to jury that it could consider susceptibility to meningitis in its award of damages was not erroneous). Under Oregon law, future medical harm that is "more than merely conceivable" is admissible for a jury to consider. *Pelcha*, 606 P.2d at 1169 (holding that evidence that there was a 30 to 45 percent chance that future surgery might be needed was admissible and its "degree of likelihood was the subject of evidence and was properly a subject for the jury to consider"); *see also Feist*, 517 P.2d at 680 (holding that an injury that creates a "predisposition to the contracting of some disease, *i.e.*, a possibility" is evidence a jury may consider because, as a matter of "common sense," a jury can award larger damages for an injury that creates the susceptibility of future medical harm than an injury that does not have that risk); *Henderson v. Hercules, Inc.*, 646 P.2d 658, 661-62 (Or. App. 1982) (holding that evidence that there was a possibility that plaintiff would need future knee surgery was permissible for the jury to consider in awarding damages) (relying on *Feist* and *Pelcha*).

Here, the Hamiltons present expert testimony that at least several studies show that exposure to 2,4-D results in an increased likelihood of lymphohematopoietic cancers of 50 to 60 percent and greater. Report of Richard A. Parent, PhD, at 3-4. Dkt. 133. This is evidence that such future medical harm is more than "merely conceivable." Under *Feist* and *Pelcha*, this presents a factual issue that could have been presented to the jury in the underlying case. *See also Zehr*, 871 P.2d at 1012 ("Generally, however, when a plaintiff asserts a claim for damages for future harm, the question whether those damages are recoverable is a question of fact for the jury, the answer to which will depend on the evidence adduced at trial."). Thus, it is also a factual issue to be decided by the jury in the pending case. *See Chocktoot*, 571 P.2d at 1259 (dividing the role of the judge and the jury in a legal malpractice action between issues of law and issues of fact in the underlying case and noting that it is for a jury to determine what should have been the outcome in the underlying case had the attorney not been negligent). Based on the expert evidence submitted to this Court, Defendants have not provided evidence "plac[ing] it beyond rational dispute" that the Hamiltons could not have made a showing in the underlying case that future medical harm was recoverable and, thus, summary judgment is inappropriate. *Chocktoot*, 571 P.2d at 1257.

Additionally, because they alleged some immediate physical harm as a result of the chemical exposure, the Hamiltons may also have potentially recovered damages for medical monitoring in the underlying personal injury trespass counterclaim. *See, e.g., Lowe*, 183 P.3d at 187 ("In Oregon, a plaintiff in a negligence action may recover the costs of diagnostic testing, and there is no reason that such a plaintiff could not also recover medical monitoring costs.") (internal citation omitted, citing *Zehr*, 871 P.2d at1011) (Walters, J., concurring); *Recovery of Damages for Expenses of Medial Monitoring to Detect or Prevent Future Disease or Condition*,

17 A.L.R. 5th 327 (1994) (compiling cases). Medical monitoring damages are not recoverable in Oregon without some present symptoms, but the Hamiltons alleged present symptoms in their personal injury trespass counterclaim. *See Lowe*, 183 P.3d at 186 (finding that allegations that smoking created a future risk of cancer, without any allegation of present harm or symptoms, insufficient to state a claim for negligence and recovery of medical monitoring costs). Additionally, the Hamiltons might have sought damages in the personal injury trespass counterclaim for their fear of developing cancer. *Lowe*, 183 P.3d at 183. It is a factual issue whether the Hamiltons would have recovered medical monitoring or fear of cancer damages in the underlying action, but that is a question for the jury.

Defendants further argue (and emphasized at oral argument) that there is no evidence in the record that Defendants knew about the Hamiltons' potential future medical harm, fear of cancer, psychological injury, and emotional injury. Defendants advised the Hamiltons to seek medical treatment, and they did not. Defendants argue that these facts foreclose as a matter of law the Hamiltons' ability to seek damages for future medical harm, fear of cancer, and psychological and emotional harm. Defendants' argument misses the nuance of a legal malpractice claim. The question is not what Defendants knew, but what a non-negligent attorney representing the Hamiltons would have known.

The Hamiltons submitted evidence to this Court that Mrs. Hamilton was crying when she met with the police, told the police that she was afraid Mr. Hamilton would get ill again after previously "nearly being killed" by a chemical exposure, and told the poison control center personnel that she attempted to get medical treatment but was unable to do so because of earlier unpaid medical bills. Thus, the Court can infer that had an attorney representing the Hamiltons inquired as to their fears and emotional and psychological injuries, the Hamiltons would have

PAGE 17 – OPINION AND ORDER

provided similar information. Whether a non-negligent attorney should have made such inquires, what a non-negligent attorney would have done with the information learned, what evidence would have been gathered and presented in defense of the summary judgment motion and in support of the claims at trial, and whether such evidence would have supported a damages award for injuries in addition to those injuries specifically alleged in the personal injury trespass counterclaim are questions of fact for the jury. See *Chocktoot*, 571 P.2d at 1257, 1259.

In summary, the Hamiltons may seek recovery in the pending action for all damages that they could have recovered in the underlying action with a non-negligent attorney. Such damages may include future medical harm, fear of cancer, and medical monitoring. Defendants have not provided evidence to place the possibility of the Hamiltons recovering such damages in the underlying action beyond rational dispute. Thus, whether such damages are recoverable in the current action is an issue of fact for the jury.

## CONCLUSION

Defendants fail to show that there is no disputed issue of material fact relating to their alleged legal malpractice in representing the Hamiltons in a previous lawsuit. Defendants' motion for summary judgment and alternative motion for partial summary judgment (Dkt. 120) are DENIED.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge